**Opinion issued June 13, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00650-CV

———————————

## IN RE THE COMMITMENT OF BRADLEY JAMES MANUEL, Appellant

---

**On Appeal from the 185th District Court**
**Harris County, Texas**
**Trial Court Case No. 681719-0101Z**

---

## MEMORANDUM OPINION

Appellant, Bradley James Manuel, appeals his civil commitment under the sexually violent predator ["SVP"] statute. *See* TEX. HEALTH & SAFETY CODE §§ 841.001–.153. For a person to be found to be a sexually violent predator, two elements must be proved: (1) the person is a repeat sexually violent offender, and (2) the person suffers from a behavioral abnormality that makes the person likely to

engage in a predatory act of sexual violence. *Id.* § 841.003(a). In two related issues on appeal, appellant contends that the evidence is legally and factually insufficient to prove the second issue, i.e., that he suffers from the requisite "behavioral abnormality." We affirm.

## BACKGROUND

Two witnesses testified at the civil commitment trial: Appellant and Dr. Randall Price, a forsensic psychologist. Their testimony is summarized as follows:

*Appellant's testimony*

Appellant testified that he was sexually abused by an aunt from the age of 3 until 11; he also claimed that his father sexually abused him. Appellant claimed to have a good childhood, until fourth grade, when he became rebellious. He eventually dropped out of school in the 9th grade. At the age of 12 or 13, he began using drugs, including marihuana, cocaine, LSD, and heroin. He also sold drugs and exchanged drugs for sex. Appellant also acknowledged being an alcoholic.

Appellant met his common-law wife when he was 20; she had two children under the age of two at the time. His wife soon had two more children during their marriage. Appellant gave deposition testimony acknowledging that he touched his step-daughter inappropriately when he was bathing her beginning when she was a one-year-old. He also acknowledged that he bathed both his step-daughter's and step-son's genitals "roughly" because he resented being asked to bathe them.

2

Appellant thought his step-children were "promiscuous" because the boy, then six years old, would masturbate and "mess with his sister." He testified that the boy and girl, then four years old, would play together in a sexual manner.

One night, appellant's wife left him with the children and went to work. He was drinking, smoking marihuana, and watching pornography. He left the room for a while and returned to find the boy and girl watching the pornography and "playing with each other." It made appellant angry, and he yelled at them, "if that's what you'll want to do then that's what you-all are going to do." He then made the girl put her mouth on the boy's penis, and made the boy put his penis in the girl's vagina. When the girl complained that it hurt, appellant made the boy go take a shower. Appellant then made the girl perform oral sex on him before he penetrated her both vaginally and anally. When the girl screamed, appellant stopped and he made her take a bath because "what they did was disgusting."

CPS became involved and took custody of the children. While the CPS investigation was proceeding, appellant slept at some friends' house. The friends had three boys, ages 2, 5, and 6. While he was staying there, the two older boys claimed that appellant tied the older boy to a bed and raped him, while making the younger boy watch.

3

Appellant pleaded guilty to raping his step-daughter, and, though he continued to deny any other offense, was convicted of raping his friends' son. He was sentenced to 25 years' confinement for each offense.

While in prison, appellant earned his GED and took some college classes. He also did some on-the-job training. He also got into trouble in prison for exposing himself to a female guard that he claimed was "coming on" to him. He claimed that he does not need treatment for drug or alcohol addiction because he quit using them while in prison.

Appellant was offered parole and sex offender treatment. He claimed that he rejected the parole, but that he did want the sex offender treatment.

Appellant acknowledged that, while giving his deposition, he stated that he had a "sickness," that "would never go away." He said, "It's something you have to keep in check, yes." He acknowledged that he "was [] sexually addicted," "[f]or a long time."

Appellant testified that he was currently engaged to a woman from the Phillipines that he met through a pen-pal program, and that "she's going to come to the United States . . . to try to have a life together." Once released, appellant planned to live on a large piece of property owned by the mother of a man he met in prison, and that he would renovate the property in exchange for a place to stay.

Appellant denied being attracted to prepubescent children. He testified that he offended because of "stress and anxiety." He did not believe that he would ever offend again.

*Dr. Price's testimony*

Randall Price testified that he holds a Ph.D. in psychology, and that he is board certified in forensic psychology. He is also a licensed sex offender treatment provider in Texas. He testified about the legal term "behavior abnormality" as set forth in the SVP statute and explained that it is a legal concept only and "is not a psychological concept at all." He noted that the SVP statute does not define the term "likely" and that "it doesn't mean any particular percentage, just more than a mere possibility." He explained that he was retained to determine whether appellant suffered from a "behavioral abnormality" as required by the SVP statute. Price testified that to conduct such an evaluation he would (1) review all the applicable records from appellant's convictions and confinement, (2) conduct a face-to-face evaluation of appellant, (3) complete a Static-99 evaluation, and (4) complete a psychopathy checklist. Price concluded that appellant "does meet the criteria for a behavioral abnormality as put forth in the Texas Health and Safety Code." In reaching this conclusion, Price testified that he was looking for three things: (1) whether appellant has a diagnosed psychological condition, (2) the risk factors for

reoffending, and (3) any protective factors that would decrease the risk of a person reoffending.

Regarding the first thing Price looks for, he testified that appellant suffers from pedophilic disorder, non-exclusive type, because he is sexually attracted to both adults and children. He reached this diagnosis because appellant had two prepubescent victims more than 6 months apart, thus his sexual attraction to children was documented over a period of time and not a single event. Price testified that pedophilic disorder is a life-long condition and is not thought to go away on its own. He did acknowledge that "not all pedophiles have a behavioral abnormality."

Regarding the risk factors for reoffending, Price testified that he used the Static-99R test, which uses 10 non-changing, or static factors, to help "provide a quantitative risk percentage based on the percentage of [sex] offenders who have re-offended over a five-year time period after the release from prison." He explained that the Static-99R is "not the final answer," but provides a "baseline" when other non-static factors are also considered. Looking solely at the 10 static factors in the Static-99R, Price testified that appellant scored a 3, which would indicate that appellant "falls in the middle, average range of risk [for reoffending] based on the data on the Static-99R." He further concluded that, after considering other risk factors, he would adjust appellant's risk of reoffending to "slightly above average in

6

the risk that he poses." He explained that reoffending means to be convicted or charged with another sexual offense.

Price explained that the Static-99R has been used to study three different sample groups. Under one study, of offenders with a score of 3, 3 to 5 percent had a new conviction within 5 years. However, in other studies, offenders with a score of 3 had reoffended at a rate of 7 to 9 percent in five years and 18 to 29 percent in 10 years. Price explained that, given the variance in the studies, he would use a point between the lowest and the highest "to take that as a baseline of the probability of reoffending, and then to look to the other risk factors and protective factors."

Price continued testifying that he also considered 13 non-static factors in his assessment of appellant. Some of those factors included: (1) sexual deviance [pedophilic disorder] consisting of multiple acts on multiple prepubescent victims, (2) psychologically coercing the children and punishing them by having them perform sex acts on one another, (3) denying or minimizing the offenses (by claiming they were caused by stress, anxiety, and previous abuse against himself) such that successful treatment is less likely, (4) having both male and female victims, (5) having victims, some of whom were family members and some of whom were not, (6) exposing himself to a female officer while in prison because she "came on" to him, (7) having both adult and prepubescent victims, (8) using drugs or alcohol when offending, (9) having two aggravated sexual assault convictions arising out of

separate incidents, (10) having refused parole, possibly because it required sex offender treatment, thereby indicating "a negative attitude about the value of treatment," (11) having untreated substance abuse issues that reduce his control over his behavior, and (12) misreading sexual cues from others.

Price then considered "protective factors" that would reduce appellant's risk of reoffending, which included (1) his "relatively older chronological" age, (2) that he was not psychotic or bipolar, (3) that "there's a fairly reasonable plan for his release," and (4) that "he has at least average intelligence and has been able to complete academic work above high school."

Price concluded that, even considering the protective factors in appellant's favor, "[m]y opinion is that his risk of reoffending is somewhat above average for other sex offenders[,]" and that "he continues to pose a significant risk that's above average and that he meets the criteria for a behavioral abnormality as described in the Texas Health and Safety Code[,]" which makes him likely to engage in predatory acts of sexual violence.

## SUFFICIENCY OF THE EVIDENCE

In two issues on appeal, appellant contends the evidence is legally and factually insufficient "to support a beyond-a-reasonable-doubt finding that [appellant] has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence." Specifically, appellant argues that "[the SVP

statute] clearly is not meant to apply to a soon-to-be-released-from-prison sex offender with only an "average" or even a "slightly above average" risk of offending."

***Standard of Review***

Proceedings pursuant to the SVP statute are civil in nature, but because the State's burden of proof at trial is the same as in a criminal case, we review verdicts in SVP cases using the standard of review applied in criminal cases. *In re Commitment of Williams*, 539 S.W.3d 426, 437 (Tex. App.—Houston [1st Dist.] 2017, no pet. h.); *In re Commitment of Stuteville*, 463 S.W.3d 543, 551 (Tex. App.—Houston [1st Dist.] 2015, pet. denied); *In re Commitment of Wirtz*, 451 S.W.3d 462, 464 (Tex. App.—Houston [14th Dist.] 2014, no pet.). We review the evidence in the light most favorable to the verdict to determine whether any rational fact finder could find, beyond a reasonable doubt, the elements required for commitment under the SVP statute. *Williams*, 539 S.W.3d at 437; *Stuteville*, 463 S.W.3d at 551. "It is the fact finder's responsibility to fairly resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic to ultimate facts." *Williams*, 539 S.W.3d at 437; *Stuteville*, 463 S.W.3d at 551; *see In re Commitment of Mullens*, 92 S.W.3d 881, 887 (Tex. App.—Beaumont 2002, pet. denied) (stating that fact finder may resolve conflicts and contradictions in evidence "by believing all, part, or none of the witnesses' testimony").

When reviewing the factual sufficiency of the evidence in a case under the SVP statute, we weigh all of the evidence to determine whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial. *Williams*, 539 S.W.3d at 437; *Stuteville*, 463 S.W.3d at 552; *see Wirtz*, 451 S.W.3d at 464–65 (noting that, while factual sufficiency review has been abolished in criminal cases in which State's burden is beyond reasonable doubt, courts have continued to perform factual sufficiency review in SVP cases; also declining to decide whether factual sufficiency review remains available in SVP proceedings because evidence in case was legally and factually sufficient). We view all the evidence in a neutral light to determine whether a jury was rationally justified in finding SVP status beyond a reasonable doubt. *Williams*, 539 S.W.3d at 437; *Stuteville*, 463 S.W.3d at 552. We may not substitute our judgment for that of the jury, which is the sole judge of credibility and the weight to be given to witnesses' testimony. *Williams*, 539 S.W.3d at 437; *Stuteville*, 463 S.W.3d at 552. We will reverse only if, after weighing the evidence, we determine that "the risk of an injustice remains too great to allow the verdict to stand." *Williams*, 539 S.W.3d at 437; *Stuteville*, 463 S.W.3d at 552.

*Legal Sufficiency*

Appellant argues that Price "double-dipped" by considering certain risk factors that were, in fact, covered by the Static-99R, and that, as a result, Price's testimony was conclusory and there was no evidence to support his conclusions.

"When [as here] a scientific opinion is admitted in evidence without objection, it may be considered probative evidence even if the basis for the opinion is unreliable." *City of San Antonio v. Pollock*, 284 S.W.3d 809, 818 (Tex. 2009); *In re Commitment of Letkiewicz*, 01-13-00919-CV, 2014 WL 2809819, at *6–7 (Tex. App.—Houston [1st Dist.] June 19, 2014, pet. dism'd) (mem. op.). Nonetheless, a verdict cannot be sustained on a mere ipse dixit of a credentialed witness. *Pollock*, 284 S.W.3d at 818; *Letkiewicz*, 2014 WL 2809819, at * 6. "[I]f no basis for the opinion is offered, or the basis offered provides no support, the opinion is merely a conclusory statement and cannot be considered probative evidence, regardless of whether there is no objection." *Pollock*, 284 S.W.3d at 818; *Letkiewicz*, 2014 WL 2809819, at *6. Thus, we review the evidence at trial to determine whether there was a basis offered for Price's opinion.

We begin noting that there is no numeric value or label that can be used to determine whether an offender is "likely" to reoffend. The word "likely" is not defined in the statute. *Williams*, 539 S.W.3d at 439. The Texas Supreme Court, in considering the different language of "likely to engage in a predatory act of sexual

11

violence" and "predisposes the person to commit a sexually violent offense," stated that "the import of predisposition and likelihood is exactly the same: increased risk." *In re Commitment of Bohannan*, 388 S.W.3d 296, 303 (Tex. 2012); *Williams*, 539 S.W.3d at 439. The court further stated, "An increased likelihood of misconduct indicates a predisposition, and a predisposition threatens increased likelihood." *Bohannan*, 388 S.W.3d at 303; *Williams*, 539 S.W.3d at 439. The court thus concluded that "whether a person 'suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence' is a single, unified issue." *Bohannan*, 388 S.W.3d at 303 (quoting TEX. HEALTH & SAFETY CODE § 841.003(a)(2)); *Williams*, 539 S.W.3d at 439.

Here, Price testified at length about his methodology, which included reviewing trial and prison records, interviewing appellant, conducting a Static-99R test regarding 10 static factors, then considering up to 13 non-static factors, as well as protective factors weighing in appellant's favor. As set forth above in this opinion, Price detailed what factors he considered and why they were important. After conducting such an analysis, Price concluded that appellant had a behavior abnormality that predisposed him to committing a sexually violent offense. As such, there was a basis to support Price's opinion. *See Williams*, 539 S.W.3d at 439–40. (finding evidence sufficient after defendant scored in "low-moderate" range for reoffending on Static-99R and that expert's opinion not based solely on Static-99R).

12

Based on Price's opinion, for which he provided a basis in evidence, we conclude that a rational jury could have found beyond a reasonable doubt that appellant suffers from a behavior abnormality that makes him likely to engage in a predatory act of sexual violence.

*Factual Sufficiency*

In his second issue, appellant argues that the evidence is factually insufficient because Price's opinion is flawed in that he considered some of the same factors in both the Static-99R and in his consideration of the 13 non-static factors. He also argues that Price did not consider several protective factors, such as appellant's lack of psychopathy. However, appellant's counsel cross-examined Price on each of these issues. On the "double-dipping" issue, Price testified that "there's overlap [with the Static-99R factors], they're not exactly the same thing, but there's overlap, and these come from different sets of risk factors. And, yeah, there's overlaps, and then one of the males that was [a] victim was one of the aggravated sexual assault of a child cases, yes." Despite the acknowledged overlap in some of the factors, Price nonetheless concluded that appellant met the statutory criteria of the SVP statute. Price also acknowledged that appellant was not a psychopath, but this did not change his opinion. It was within the province of the jury to weigh the evidence, judge the credibility of the witnesses, and resolve conflicts in the evidence. *See Williams*, 539 S.W.3d at 440–41. Viewing all the evidence in a neutral light, we conclude that the

jury was rationally justified in making the SVP determination beyond a reasonable doubt, and we cannot conclude that "the risk of an injustice remains too great to allow the verdict to stand." *Id.* We therefore hold that the State presented factually sufficient evidence that appellant had a behavioral abnormality that made him likely to reoffend and commit a predatory act of sexual violence. *See* TEX. HEALTH & SAFETY CODE § 841.003(a)(2).

Accordingly, we overrule issues one and two.

## CONCLUSION

We affirm the trial court's judgment.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Higley and Hightower.